UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARUN MOHAMMED,<br><br>　　　　Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION CENTER,<br><br>　　　　Respondent. | No. 1:26-cv-00118-DJC-CSK<br><br><br>ORDER |

　　　　Before the Court is a Motion for Temporary Restraining Order filed by a noncitizen who has been detained by Immigration and Customs Enforcement ("ICE") for seventeen months. During this time, Petitioner has never received a bond hearing nor any other individualized assessment of whether he presents a risk of flight or danger to the community. These conditions are explicitly permitted by 8 U.S.C. § 1225.

　　　　In analyzing section 1225, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). This Court shares those doubts.

The Court joins other districts in concluding that the unreasonably prolonged detention of individuals such as Petitioner under section 1225(b) without a bond hearing violates the Due Process Clause. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-00098-SAB, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) (explaining that "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process") (quoting *Martinez v. Clark*, No. 2:18-cv-01669-RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 2:18-cv-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)).

## BACKGROUND

Petitioner is a noncitizen from Bangladesh who entered the United States in August of 2024. (Opp'n at 1.) At that time, Petitioner was appended by an immigration officer. (*Id.*) An asylum officer made a finding of credible fear and placed Petitioner in immigration court proceedings. (*Id.*) According to Petitioner, his "court proceedings have been changed on multiple occasions at the accord of DHS," prolonging his detention. (Mot. at 2.) According to the pleadings before the Court, no immigration court has ordered Petitioner removed. (*Id.*)

To date, Petitioner has been detained for seventeen months. (*Id.*) During this time, it appears Petitioner has requested and been denied a bond hearing because he is detained pursuant to 8 U.S.C. § 1225(b)(1). (*See id.* at 2, 8; Opp'n at 1.)

Petitioner filed a Petition for a Writ of Habeas Corpus and a Motion for Temporary Restraining Order. (ECF Nos. 1, 6.) Briefing on the Motion for Temporary Restraining Order is now complete. (Mot. (ECF No. 6); Opp'n (ECF No. 11).) The Court ordered this matter submitted without oral argument. (*See* ECF No. 7.)

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush &*

2

1  *Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief,
2  Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable
3  harm in the absence of preliminary relief; (3) that the balance of equities tips in their
4  favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def.*
5  *Council, Inc.*, 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that there are 'serious
6  questions going to the merits' – a lesser showing than likelihood of success on the
7  merits – then a preliminary injunction may still issue if the 'balance of hardships tips
8  *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *All. for*
9  *the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted).  The
10 Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a
11 strong showing on the balance of hardships may compensate for a lesser showing of
12 likelihood of success.  *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32
13 F.4th 852, 859 (9th Cir. 2022).

## DISCUSSION

### I. Likelihood of Success on the Merits

The Government argues that, because Petitioner is detained under 8 U.S.C. § 1225(b)(1), he is not entitled to a bond hearing.  (Opp'n at 1.)  Respondents are correct that Petitioner is detained under section 1225 and that this section does not provide those subject to its provisions a statutory right to a bond hearing no matter the length of their detention.  But Respondents fail to address Petitioner's argument that the Constitution requires one.  (*See* Mot. at 2.)

Section 1225(b)(1) does not provide those detained pursuant to its provisions with a bond hearing or limit the duration of time for which they can be detained. Applicants for admission held under section 1225(b)(1) are ordinarily removed "without further hearing or review" pursuant to an expedited removal process.  8 U.S.C. § 1225(b)(1)(A)(i).  But if a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," then that noncitizen is referred for an asylum interview.  8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview, the

3

noncitizen remains detained. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the noncitizen has a credible fear of persecution, "the [noncitizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). As the Supreme Court explained in *Jennings v. Rodriguez*, section 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. 281, 297 (2018). Until consideration of an individual's application for asylum has concluded, "nothing in the statutory text imposes any limit on the length of detention" and "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Id.*

However, Petitioner's rights are not limited to those laid out by statute. Nothing in the Supreme Court's decision in *Jennings* precludes Petitioner from bringing this as-applied constitutional challenge. *See Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (explaining that the Court's decision that mandatory detention statute did not provide a bond hearing "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it"). As the Ninth Circuit identified on remand from *Jennings,* that Supreme Court case solely addressed whether section 1225 itself permits arbitrary prolonged detention and "declined to reach the constitutional question." *Rodriguez*, 909 F.3d at 255. The facts presented compel this Court to now reach Petitioner's likelihood of success on that question.

Petitioner argues his seventeen-month detention without any individualized assessment violates the Due Process Clause. (Mot. at 2, 8.) The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). While noncitizens located outside the United States are not granted the full protection of the Constitution, the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful,

4

unlawful, temporary, or permanent."). To determine if Petitioner's due process rights have been violated, the Court must answer two questions: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025).

First, Petitioner has a clear liberty interest in securing his freedom from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner was initially detained by ICE in August of 2024 and has remained in custody for the seventeen months since. (Mot. at 2.) Further, due to Petitioner's asylum claim, he is not subject to expedited removal but rather faces indefinitely prolonged detention while his asylum case is processed. His case will first be heard by an Immigration Judge, then by the Board of Immigration Appeals, followed by the Ninth Circuit provided either party seeks further review.[1] As Petitioner has been deprived of the liberty secured by the Due Process Clause and this deprivation will continue for a protracted and indefinite period, Petitioner has established his liberty interest. *See Zadvydas*, 533 U.S. at 690, 693.

Having established that Petitioner has a protected liberty interest, the Court must now determine what process is due. District courts within this Circuit have adopted a variety of multi-factor tests for determining at what point a noncitizen detained pursuant to a mandatory detention statute is constitutionally entitled to a bond hearing. *See, e.g.*, *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (adopting six factor test to assess the reasonableness of prolonged

---

[1] The Government's Opposition indicates this step may have already occurred as Petitioner was scheduled for a hearing to decide his asylum claim on Thursday, January 15, 2026. (Opp'n at 1.) While the Government has not informed the Court of the outcome of that hearing or whether it in fact occurred, even if Petitioner has now had a hearing before an Immigration Judge on his asylum claim, he still faces prolonged detention while any administrative or judicial review plays out.

detention in section 1225 context); *Rodriguez v. Nielsen*, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (adopting bright-line rule that detention beyond six months is prolonged and entitles detainee to bond hearing in 8 U.S.C. § 1226(c) context); *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (explaining that to "determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government"); *Abdul-Samed*, 2025 WL 2099343, at *6 (applying same test in section 1225 context).

Several such courts deemed the test laid out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) inapt to assess at what point prolonged detention violates Due Process. *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1107; *Lopez*, 631 F. Supp. 3d at 879. However, because the Ninth Circuit has identified *Mathews* as setting an appropriate test for what process is due in similar circumstances, this Court declines to substitute the *Mathews* factors for those identified by other courts. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). Still, those considerations identified are relevant to the due process analysis in this context, and the Court will address them within the *Mathews* analysis.

Under the *Mathews* test, the Court considers three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner has a substantial private interest in access to a process that could result in his release. To date, Petitioner has been detained for seventeen months. (Mot. at 2.) This length of time far exceeds that other courts have found warrant a

bond hearing under the Due Process Clause.  *See, e.g.*, *Lopez*, 631 F. Supp. 3d at 879–80 (finding fact that detention had spanned twelve months weighed in favor of granting bond hearing).  This detention is likely to endure indefinitely while determinations about Petitioner's asylum claim and removability are made and appealed.  *Martinez*, 2019 WL 5968089, at *9 (finding likely length of future detention absent judicial intervention weighed in favor of granting a bond hearing even where Petitioner had already received a removal order and filed an appeal).  Petitioner also asserts, and the Government does not contest, that these proceedings have been delayed "on multiple occasions at the accord of DHS, through no fault of [Petitioner's] and continuously prolonged [his] detention." (Mot. at 2; *see Martinez*, 2019 WL 5968089, at *10 (explaining that "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable").)  Therefore, this factor weighs strongly in Petitioner's favor.

The risk of erroneous deprivation is also considerable.  Petitioner has not received a bond hearing.  (Mot. at 2.)  Civil immigration detention is "nonpunitive in purpose and effect" and, therefore, only justified when a noncitizen is a flight risk or danger to the community.  *Zadvydas*, 533 U.S. at 690.  Petitioner asserts, and Respondents do not contest, that Petitioner has no criminal record and poses no risk to community safety.  (Mot. at 2; *see generally* Opp'n.)  Therefore, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all." *Maksim v. Annex*, No. 1:25-cv-00955-SKO, 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025).

Finally, Respondents' interest in detention is low.  *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Hernandez*, 872 F.3d at 994 (explaining that the "government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative

7

conditions"). The effort and cost required to provide Petitioner with procedural safeguards are minimal. Therefore, this final factor also weighs in Petitioner's favor.

* * *

Having established Petitioner has a liberty interest and determined, via the *Matthews* factors, that he is entitled to process, the Court finds Petitioner has established a likelihood of success on the merits of his due process claim. *See Banda*, 385 F. Supp. 3d at 1117 (holding Petitioner who had been detained for seventeen months pursuant to section 1225 without a bond hearing was likely to succeed on the merits of due process claim and entitled to a bond hearing); *Abdul-Samed*, 2025 WL 2099343, at *8 (same for Petitioner detained for sixteen months).

**II. Irreparable Harm**

Petitioner will suffer irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and psychiatric care in ICE detention facilities." *Hernandez*, 872 F.3d at 995. More broadly, the Ninth Circuit has also acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Id*. Petitioner has thus established irreparable harm.

**III. Balance of the Harms & the Public Interest**

The final two *Winter* factors merge when the Government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The interests of equity and the public weigh in favor of Petitioner here. As discussed above, Petitioner is harmed by his ongoing detention. A temporary restraining order also inflicts minimal harm to the Government. Though Respondents have an interest in enforcing immigration laws, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). "[N]either equity nor the public's interest are

furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). There also appears to be no dispute as to Petitioner's risk of flight or danger to the community. For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

**IV. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Because the "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 6) is GRANTED.
2. Within seven (7) days of this Order, Petitioner shall be afforded a constitutionally adequate bond hearing before an Immigration Judge. At this hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.[2] In the event Petitioner is "determined not to be a

---

[2] This burden of proof has been regularly applied by courts reviewing similar cases, and the Court adopts the views of those courts here. *See, e.g.*, *Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL 2935630, at *13-14 (N.D. Cal. Oct. 14, 2025); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-

9

danger to the community and not to be so great a flight risk as to require detention without bond," the Immigration Judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez*, 872 F.3d at 1000.

3. Respondents shall file a status report within nine (9) days of the date of this Order, confirming whether a bond hearing was held and, if so, the outcome of that hearing.

4. Respondents are ORDERED TO SHOW CAUSE on or before January 29, 2026, as to why this Court should not issue a preliminary injunction on the same terms as this Order.  On or before February 4, 2026, Petitioner may file a reply, if any, to Respondents' opposition.  Pursuant to Local Rule 230(g), the Motion for Preliminary Injunction is submitted on the papers.  If the Court subsequently concludes that oral argument is necessary, a hearing will be set and the parties notified accordingly.

5. Respondents' Opposition (ECF No. 11) was also filed as a Motion to Dismiss.  To the extent it was intended as such, it is DENIED without prejudice to refiling in accordance with the local rules.  *See* L.R. 230.

IT IS SO ORDERED.

Dated:  **January 23, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Mohammed26cv00118.tro

---

HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); *Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).

10